(Nos. 1746-1748, Consolidated—

JAMES' BAILEY, No. 1746, LITTRELL CLARK, No. 1748, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 2, 1933.*

MURRAY MILLER AND RATNER, CHAPMAN & RATNER, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

Mr. JUSTICE LINSCOTT delivered the opinion of the court:

Claimant James Bailey filed his declaration with the Secretary of State on March 26, 1931, alleging that he received an injury while driving a car on a public highway under the custody and control of the State of Illinois, at Wauconda, Lake County, Illinois, on the 8th day of February, A. D. 1931. This was State Route 176. The accident occurred at about nine o'clock p. m., while he was approaching a curve in the outskirts of Wauconda. The claimant alleges that he was

forced off the concrete onto the shoulder of the road by the action of bright headlights of an oncoming car. He further alleges that the State of Illinois caused to be placed on the outside of the curve, a series of wooden posts sunk into the ground and standing three or four feet above the ground in a row; that they were unlighted and unpainted and he further alleges that agents of the State of Illinois caused to be placed on the road adjacent to the series of posts above described, a large wooden spool of wire which was to be strung between the posts; that the spool of wire weighed fifteen hundred pounds and was extended three feet in towards the center of the road from the posts, and that neither the posts nor the wire was guarded at the time mentioned and no warning lights indicated their existence, and that the same constituted a hazard to persons traveling along and upon the highway. He further alleges that by reason of having been forced off the road, his Cadillac automobile collided with the spool of wire and caused the automobile to turn over four times and was damaged to the extent of Nine Hundred Dollars, and the claimant was injured, taken to a hospital at Libertyville and was compelled to pay out large and divers sums of money for doctor bills, hospital bills, and lost a considerable sum of money by virtue of the fact that he was unable to follow his usual occupation, and claims that he will be permanently disfigured, and has lost the partial use of the fingers of his right hand; that he sustained five broken ribs and miscellaneous glass cuts.

No averment is contained as to the amount of money paid out on account of doctor bills and hospital bills, but there is a general claim of damages in the sum of Seventy-five Hundred Dollars.

At the time of the alleged injury, one Littrell Clark was with James Bailey, and he has also filed a claim for damages on the same date that Bailey filed his claim for damages. He alleges that he was a passenger in the car of James Bailey on a highway in the custody and control of the State of Illinois, at Wauconda, Lake County, Illinois, on Route 176; that he was in the exercise of all due care and caution for his own safety; that the car in which he was riding being driven by James Bailey, was forced off the concrete onto the shoulder

of the road by the action of bright headlights of an oncoming car.

Both claimants alleged that they had never driven over Route 176 before and the averment of negligence alleged by Clark were approximately the same as those alleged by Bailey.

Claimant Clark alleged that he sustained a broken leg and has an open ulcer of the leg, concussion of the head, lacerations and glass cuts of the scalp, permanent partial loss of use of the left leg and permanent disfigurement. He was taken to a hospital at Libertyville, spent large sums of money in hospital and doctor bills and lost a large sum by reason of being unable to follow his usual occupations, and sustained damages in the sum of Ten Thousand Dollars.

The two claims were consolidated by the Attorney General in the statement, brief and argument, for the reason that the facts involved in the two cases were the same, the only difference being that Bailey was the owner and driver of the automobile, while claimant Clark was the passenger. The Attorney General takes the position that there was no evidence in either case of the roll of wire belonging to the State of Illinois, nor that which is more important—that any employee or worker for the State of Illinois placed the wire in the position where it was struck by these claimants.

Bailey and Clark each filed separate briefs, contending that the injury was caused by the carelessness of the State employees who were engaged in constructing a fence along a curve in the road. From the deposition of Clark, it appears that he had traveled that road before; that Bailey was traveling from thirty-five to forty miles an hour; that he was riding with Bailey; that he was not paying a great deal of attention to Bailey's driving. Another car was coming from the opposite direction with very bright lights and he "kind of pulled over," saying "got to give this guy plenty of room"; that they were going around a slight curve in the road and hit something, and that was all he knew until he woke up in the hospital; that he averaged One Hundred Seventy-five Dollars a week in his earnings and was here claiming One Hundred Fifty Dollars a week for nine weeks; that he was fairly sure of his salary but not at all sure of commissions; that his suit

and overcoat were damaged and it cost him One Hundred Fifty Dollars.

On cross examination, Clark said that he was not watching the driving of the car at all. On re-direct, he was asked by his counsel if there was anything about Mr. Bailey's driving that would cause him to be ill at ease, and he answered "no," and he was again asked if he was using all due care and caution for his own safety, and he answered that he was. These latter questions call for conclusions on behalf of the witness and he could only testify to facts.

Complainant offered Exhibit 8, which was a letter from C. R. French on the stationery of the Department of Public Works and Buildings, Division of Highways. French signed his name by typewriter as Superintendent of Construction, and in his letter stated that the guard fence being constructed on Route 176 near Wauconda was being done by the State day labor forces under French's supervision. The deposition of Bailey was also taken and offered in evidence, and stated that on the 8th day of February, 1931, he was at Riverside Park Subdivision, seven miles from McHenry, Illinois; that his home was in Chicago and he was returning there that evening on Route 176; that near Wauconda, while driving at a rate of speed of forty to forty-five miles an hour, a car with very bright lights approached him from the opposite direction coming around the turn; that he edged over to the side of the road; that the other man was traveling at about in the center of the road; that the lights of the approaching car blinded him; that he finally drove over to the shoulder of the road and came in contact with a spool of wire while just approaching the curve, and the next thing he recalled was when he woke up about five minutes later in a nearby field. He stated that there was no guard light as a warning on the wire, and that the spindle of wire protruded out of the road three feet, or possibly three and one-half feet; that he did not see it until he was right upon it, too close to make a turn. He did not know whether his car could be repaired or not; that he had not seen his automobile since the accident. On cross examination, he stated that he did know what the object was that he hit; that it protruded out on the right hand side of the road perhaps two and one-half or three feet from the extreme right hand side of the road on the dirt shoulder. He

also stated on cross examination that this protruding object was about the width of an automobile, perhaps five or six feet from the edge of the road; that the lights of his car were burning; that he had bright lights on his car, but it does not appear from the evidence whether the bright lights or the dimmers were on.

There was considerable medical testimony on behalf of both of these claimants. Other evidence was produced to show that the road in question was built by the State of Illinois and that some construction work was being done on the road; that the posts had been put in, but the wire had not been attached thereto; that the wire was all on the spindle; that the posts had been "knocked to pieces." A week later the wire was still there but outside of the ditch and that the spindle of wire was two and one-half feet from the pavement; that the wire and posts had been there about two weeks and a half before the accident.

A witness was produced who stated that he thought it was a State truck, but did not know; that it hauled the wire to the place in question; that the materials had been there for some little time. Other evidence was produced to show that the spool of wire weighed 1,530 pounds; that the wire stood from 40 to 45 inches high and was about 26 or 27 inches in diameter.

Inasmuch as both claimants were injured in the same accident, and under the same state of facts, and are represented by the same counsel, we have elected to consider these cases together, and while it may be inferred from the testimony and all the facts that the roll of wire was placed in the position it was at the time of the accident by agents of the State of Illinois, yet, under the view we take, that is immaterial.

It clearly appears from the evidence that the roll of wire was not upon the usual travelled portion of the highway, but was off the concrete from two and one-half to three feet. Certainly, the State of Illinois could not be expected by any reasonable person to keep the whole road from property line to property line, free of obstruction. The very nature of the facts prohibit this, but it clearly appears from the evidence that the cause of the injury to both claimants was the bright lights of an oncoming car in the middle of the pavement which forced Bailey from the pavement.

If several persons jointly commit a tort, some or all may be sued, jointly or one separately, a tort being in its nature, the separate act of each. But one is never liable for the tort of another, unless they act in concert; and several will not be held to the acts of one without cooperation, or their conduct naturally produced the acts which resulted in injury. Where the acts of different persons are entirely distinct and separate as to any aid, advice, counsel or countenance, from one to the other, there can be no joint liability.

> *Chicago & Northwestern Ry. Co.* vs. *Scates,* 90 Ill. 586.

> *Yeazel* vs. *John T. Alexander, et al.* 58 Ill. 254.

Nothing appears in the evidence that the driver of the approaching car toward claimants was either in the employ of the State or in any way connected with the State of Illinois, and nothing appears in the evidence other than that the acts of those who were putting in the improvement for the State and the driver of the oncoming car, were separate and distinct and not in any way connected and there could not be joint or separate liability.

The evidence does not disclose the name of the driver of the car which was being operated with bright lights.

The maxim of the law here applicable is that in law the immediate and not the remote cause of any event is regarded. In other words, the law always refers the injury to the proximate, not the remote cause.

> 22 R. D. L. Proximate Cause, Section 3.

> *Braun* vs. *Craven,* 175 Ill. 401.

Manifestly the bright lights on the car approaching the claimants were the proximate cause of the injury.

The petition, therefore, of both claimants for damages will be denied.